**STARK & STARK**
A Professional Corporation
By: Gene Markin, Esq.
Attorney ID #022382010
993 Lenox Drive
Lawrenceville, NJ 08648-2389
Phone:  (609) 895-7248
Email:  gmarkin@stark-stark.com
*Attorneys for Plaintiff Going Pro: The Business of Wildlife Photography LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **GOING PRO: THE BUSINESS OF WILDLIFE PHOTOGRAPHY LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **KEVIN MONELL; JASON CARUSO; and THE JOURNAL OF WILDLIFE PHOTOGRAPHY, LLC**, <br><br> Defendants. | **CIVIL ACTION NO.:** <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff Going Pro: The Business of Wildlife Photography LLC ("Going Pro"), by way of Complaint against the Defendants Kevin Monell ("Monell"), Jason Caruso ("Caruso"), and The Journal of Wildlife Photography, LLC ("JWP"), hereby avers and alleges as follows:

## SUMMARY OF CASE

1.      This is an action for violations of the New Jersey Computer Related Offense Act and the Defend Trade Secrets Act, misappropriation of trade secrets, conversion, unjust enrichment, injunctive and other equitable relief seeking

return of Plaintiff's client lists and enjoining Defendants from continued unauthorized use of Plaintiff's trade secrets as well as for damages arising out of Defendants' unauthorized use and commercialization of Plaintiff's trade secrets and proprietary customer data.

2.     Starting in June 2022, Defendants Monell and Caruso began accessing Going Pro's online Stripe account where Going Pro maintains its customer database, including customer names, email addresses, and payment histories.

3.     Defendants Monell and Caruso did not have authority or permission to access Going Pro's online Stripe account.

4.     In September 2022, Defendant Monell deliberately and without permission exported and downloaded Going Pro's proprietary client list and customer financial data history.  Thereafter, Defendant Monell again accessed Going Pro's Stripe account without authorization and again downloaded Going Pro's updated client list in October, November, and December 2022.

5.     Defendants used Going Pro's client lists and financial data to further the commercial interests of JWP, a competitor of Going Pro.

6.     Defendants used Going Pro's proprietary customer information to send marketing emails to Going Pro's customers, solicit new business, offer new products, and unfairly compete with Going Pro.

4872-8338-1840, v. 1

7.     Upon information and belief, Defendants are continuing to utilize and misappropriate Going Pro's trade secrets and customer data for their benefit without authorization from Going Pro, the sole owner of the subject trade secrets and customer data.

## **PARTIES**

8.     Plaintiff Going Pro: The Business of Wildlife Photography LLC ("Going Pro") is a Wyoming limited liability company with a principal office address at 30 N Gould Street, Suite N, Sheridan, WY 82801.

9.     Annalise Kaylor Worley ("Worley") is the sole member of Going Pro and is a citizen of Georgia.

10.     Going Pro is therefore a citizen of Georgia.

11.     Defendant Kevin Monell is a citizen of New Jersey with an address at 23 Birchwood Ln, Boonton, NJ 07005.

12.     Defendant Jason Caruso is a citizen of South Carolina with an address at 8092 Fort Hill Way, Myrtle Beach, SC 29579.

13.     Defendant Journal of Wildlife Photography, LLC ("JWP") is a Montana limited liability company that maintains a business address at 1627 W. Main Street, #407, Bozeman, MT 59715.

14.     The sole member of JWP is JayMoe LLC ("JayMoe"), a New Jersey limited liability company.

15.     Upon information and belief, the only members of JayMoe are Monell and Caruso.

4872-8338-1840, v. 1

16.     Therefore, JWP is a citizen of New Jersey and South Carolina.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the Parties such that the dispute is between citizens of different states.

18.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this matter involves a federal question under the Defend Trade Secrets Act.

19.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

## BACKGROUND

20.     JayMoe and Jared Lloyd Photography ("Lloyd Photography") started and were partners in JWP until a partnership dispute resulted in a business divorce by which JayMoe purchased Lloyd Photography's ownership stake and Lloyd Photography ceased being an owner/member of JWP.

21.     Jared Lloyd ("Lloyd") is the sole owner of Lloyd Photography and was one of the managers of JWP.  Lloyd Photography is well known in the wildlife photography industry as a leading photographer and developer of wildlife photography for commercial use.

22.     When JWP was founded, JWP used Lloyd Photography's client list to market and solicit clients.

4872-8338-1840, v. 1

23.     At the time, Lloyd Photography maintained its client list on Stripe, an online payment management software/platform.

24.     As part of its partnership with JayMoe, Lloyd gave Monell and Caruso access to Lloyd Photography's Stripe account; Monell and Caruso received login credentials tied to their email addresses: jason@fastforwardinc.com and kevin@fastforwardunlimited.com, which Monell and Caruso used to login to Lloyd Photography's Stripe account in the early days until Lloyd Photography's client list was migrated to a different payment management system maintained and operated by JWP.

25.     After the list was migrated, Monell and Caruso no longer needed access to the Stripe account and Lloyd never removed Monell and Caruso as users or restricted their access because they had no reason to log back in to Lloyd Photography's Stripe account.  And in fact, for a long time neither Monell nor Caruso ever logged in or accessed Lloyd Photography's Stripe account.

26.     In April 2022, Lloyd and Worley started Going Pro, a digital subscription service tool and resource for wildlife photographers looking to enhance their skills and learn more about the business side of wildlife photography.

27.     Lloyd and Worley created a separate Stripe account for Going Pro, which became a sub-account of Lloyd Photography's account although it remained an independent account and had to be accessed separately from Lloyd Photography's account.

4872-8338-1840, v. 1

28.     Through its own marketing efforts and public outreach initiatives, Going Pro developed a client base and customer following.

29.     Any customer that paid for a subscription or paid for any service such as one-on-one mentorships was added to Going Pro's customer database list in Stripe, which contained customer names, email addresses, and payment history.

30.     Going Pro has always kept its customer list secret, restricted access to its contents, and maintained its secrecy.

31.     Going Pro's customer list is an invaluable trade secret that gives Going Pro a competitive advantage and which has independent economic value.

32.     The information contained in the customer list is not publicly available and is certainly not discoverable by competitors by regular, legitimate means.

33.     After Defendants learned about Going Pro and Lloyd's involvement, Monell and Caruso logged in to Lloyd Photography's Stripe account using their until-then dormant login credentials and made the conscious and knowing decision to switch accounts and login to Going Pro's Stripe account.

34.     Based on Stripe's security access records and logs, Monell and Caruso repeatedly accessed Going Pro's Stripe account and records contained in that account about once a week from June 20, 2022 through August 1, 2022.

35.    Then, on September 11, 2022, Monell logged in to Lloyd Photography's account, knowingly switched accounts to view Going Pro's data, and exported Going Pro's proprietary client list and customer financial history data.

36.    Later that month, JayMoe began separation talks with Lloyd Photography and demanded that Lloyd no longer be involved with Going Pro, a competitor of JWP.

37.     Lloyd agreed, sold his shares in Going Pro to Worley who became the sole owner as of September 22, 2022.

38.    Caruso and Monell were informed of Lloyd's exit from Going Pro and knew that Worley was the sole owner as of the end of September 2022.

39.    Yet, on October 14, November 30, and December 2, 2022, Monell logged in to Stripe, purposefully and without permission accessed Going Pro's account, and again downloaded Going Pro's client list and financial data.

40.    Caruso had likewise logged in and accessed Going Pro's Stripe account without permission on several occasions between September and November 2022.

41.    Upon information and belief, Monell downloaded Going Pro's client lists from his home in New Jersey and shared those lists with Caruso.

42.    Upon information and belief, Monell and Caruso used Going Pro's proprietary client list and customer payment information to market, promote, and sell JWP's goods and services to Going Pro's clients and customers.

43.    Going Pro uses a "test dummy" email address to test out its own marketing and promotional emails before distributing them to its full client list.

44.    This "test dummy" email address was included in the client list downloaded by Monell.

45.    After the unauthorized downloads of Going Pro's client list and email addresses, the "test dummy" email address started receiving marketing and promotional emails from JWP.

46.    The "test dummy" email was exclusive to Going Pro and could not have been obtained or known by Monell and Caruso other than through the exported client lists.

47.    Moreover, exclusive Going Pro contacts and newsletter subscribers (who never subscribed to JWP or used JWP's services) started receiving JWP's marketing emails after the computer breaches and unauthorized downloads.

48.    Furthermore, the lists downloaded by Monell contained Going Pro customer payment history and financial data, which gave JWP insight into the inner workings of a competitor's business and pricing models.

49.    Upon information and belief, JWP used Going Pro's financial information to introduce competing products and services, which JWP had previously not offered or contemplated offering, in order to unfairly compete with Going Pro and divert customers away from Going Pro and to JWP.

50.     Defendants used Going Pro's customer lists and financial data for their own pecuniary benefit and to the detriment of Going Pro.

51.     Going Pro has been financially and irreparably harmed by Defendants' unauthorized taking and misappropriation of Going Pro's trade secrets.

## COUNT ONE
## VIOLATON OF THE NEW JERSEY COMPUTER RELATED OFFENSES ACT
## (*N.J.S.A. 2A:38A-3*)

52.     Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

53.     The New Jersey Computer Related Offenses Act ("CROA") makes it unlawful to alter, damage, access, or obtain data from a computer without authorization.

54.     Monell and Caruso are "persons" within the meaning of CROA.

55.     Monell and Caruso purposefully and knowingly accessed Going Pro's Stripe account without permission or authorization.

56.     Monell and Caruso purposefully and knowingly accessed Going Pro's customer data and client lists without permission or authorization.

57.     On several occasions, without authorization or permission, Monell purposefully and knowingly took, exported, and downloaded Going Pro's customer list containing customer names, email addresses, and financial payment histories.

58.     Monell and Caruso then used the ill-gotten customer lists to send marketing and promotion emails to Going Pro's customers on behalf of JWP.

4872-8338-1840, v. 1

59.     Monell and Caruso also used Going Pro's customer lists to develop new products and solicit business from Going Pro's customers.

60.     Monell and Caruso used Going Pro's customer lists to unfairly compete with Going Pro and to divert customers away from Going Pro and to JWP.

61.     As a result of Monell and Caruso's unauthorized accessing, taking, and misappropriation of Going Pro's proprietary data and customer lists, Going Pro has been damaged by and through, and without limitation, loss of business, loss of customers, loss of reputation, loss of profits, and loss of control of its trade secrets and client lists.

62.     To the extent Monell and Caruso acted as agents of JWP in performing the acts and violations complained of herein, JWP is vicariously liable for the acts and conduct of Monell and Caruso.

63.     As a result of Defendants' CROA violations, Going Pro is entitled to return of its customer lists, compensatory and punitive damages, and attorneys' fees and costs as allowed by CROA.

## COUNT TWO
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (*18 U.S.C.S. § 1836, et seq.*)

64.     Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

4872-8338-1840, v. 1

65.     Going Pro's customer lists containing customer information, identification, contact information, and financial payment history are trade secrets subject to protection under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836.

66.     The aforementioned lists are a compilation of information that derive independent economic value by not being generally known to or accessible, through proper means, to competitors, such as JWP, who can profit from their explicit and/or implicit and/or intentional and/or inevitable use or disclosure.

67.     This information is related to products or services used in or intended for use in interstate commerce.

68.     Going Pro has taken reasonable measures under the circumstances to maintain the secrecy of this information.

69.     JWP became privy to this information solely as a result of Monell's unauthorized access into Going Pro's Stripe account and the unauthorized taking of Going Pro's customer lists without permission.

70.     Based on the information obtained and how it was obtained, Monell and Caruso knew the aforementioned trade secrets and/or confidential information were acquired by illicit means and JWP was not authorized to use that information in any way.

71.     Yet Defendants knowingly stole, or without authorization appropriated, took, and carried away such information.

72.     Defendants engaged in this conduct intending or knowing that it would injure Going Pro, the owner of the trade secrets at issue.

4872-8338-1840, v. 1

73.     The foregoing conduct of Defendants constitutes a misappropriation and misuse of Going Pro's confidential, trade secret information.

74.     The Defend Trade Secrets Act provides that any organization that commits an offense under the Act "shall be fined not more than the greater of $5,000,000 or 3 times the value of the stolen trade secret to the organization." 18 U.S.C. § 1832(b).

75.     Defendants acted willfully and maliciously in misappropriating Going Pro's confidential, trade secret information for their own benefit and to the intended detriment of Going Pro.

76.     As a consequence of the foregoing, Going Pro has suffered and will continue to suffer economic losses, including but not limited to, lost customers, business, revenues, and profits, as well as irreparable harm and loss of goodwill, and Going Pro is entitled to compensatory damages in an amount yet to be determined pursuant to 18 U.S.C. § 1836(b)(3)(B), exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C), attorney's fees, expenses, and costs pursuant to 18 U.S.C. § 1836(b)(3)(D).

## COUNT THREE
## MISAPPROPRIATION

77.     Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

78.     Despite Going Pro's demand that Defendants cease and desist from using Plaintiff's trade secrets, including the customer lists and data obtained by Monell and Caruso from Going Pro's Stripe account, Defendants have continued

4872-8338-1840, v. 1

to use and misappropriate Plaintiff's trade secrets for their own personal and business pecuniary benefit and to the detriment of Plaintiff.

79.    Defendants, by their actions, have unlawfully misappropriated Plaintiff's trade secrets and confidential business information and Plaintiff's rights thereto, including its right to exclusively control the use and commercialization of its customer lists.

80.    As a result of Defendants' misappropriation, Going Pro has been damaged.

81.    Moreover, as a result of Defendants' misappropriation, Going Pro has been, and will continue to be, irreparably harmed unless Defendants, and all persons or entities acting on their behalf, in concert with them or as their agents, are permanently enjoined from continuing to possess, use, utilize, control, or store Plaintiff's trade secrets and confidential customer lists.

82.    Going Pro therefore requests the Court enter an order directing Defendants to immediately turn over and make available to Plaintiff all of Plaintiff's trade secrets and customer lists, as previously requested and specified.

## COUNT FOUR
## UNJUST ENRICHMENT

83.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

84.    As set forth more fully above, Defendants have willfully and intentionally infringed, converted, and misappropriated Plaintiff's trade secrets and customer lists.

4872-8338-1840, v. 1

85.     Despite Plaintiff's demand that Defendants cease using the customer lists, and immediately deliver to Plaintiff all of Plaintiff's property in their possession, custody, and control, Defendants have refused.

86.     As such, Defendants continue to possess and use Plaintiff's customer information without authorization in marketing and promoting JWP's goods and services, and in soliciting and converting Going Pro's customers.

87.     Upon information and belief, Defendants have been and/or will be enriched at the expense of Going Pro.

88.     Any enrichment and pecuniary benefits Defendants have received and/or will receive from new customers or business obtained in connection with Defendants' use of Going Pro's trade secrets and customer lists are a direct and proximate result of Defendants' unauthorized use, misappropriation, and conversion of Plaintiff's trade secrets and customer data.

89.     Accordingly, any such enrichment is unjust and should, in equity and good conscience, be returned to Plaintiff.

90.     As a result of Defendants' unjust enrichment, Plaintiff has been harmed and damaged.

## COUNT FIVE
## UNFAIR COMPETITION

91.     Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

92.    Defendant JWP has used, and upon information and belief is continuing to use, Going Pro's confidential and proprietary information, and trade secrets, in order to compete with Going Pro.

93.    JWP's conduct described herein constitutes unfair competition under applicable common law.

94.    As a direct and proximate result of JWP's wrongful conduct, Going Pro has suffered economic losses, including but not limited to, lost customers, business, revenues, and profits, as well as irreparable harm and loss of goodwill, and Going Pro is entitled to compensatory damages in an amount to be proven at trial and punitive damages as a result of JWP's intentional, willful, and malicious conduct.

## COUNT SIX
## TORTIOUS INTERFERENCE WITH EXISTING AND PROSPETIVE CONTRACTUAL AND BUSINESS RELATIONSHIPS

95.    Each of the foregoing paragraphs is repeated, realleged, and incorporated by reference as if set forth at length herein.

96.    Economic relationships have existed between Going Pro and its customers and other entities, which have been advantageous to Going Pro.

97.    Being in the business of, among other things, wildlife photography, Going Pro has developed valid and existing business relationships with hundreds of customers with the probability of future economic benefit for Going Pro.

98.   Defendants knew that Going Pro sought to protect its relationship with its customers and would never have divulged confidential business information and trade secrets to Defendants.

99.   In spite of this knowledge, Defendants wrongfully interfered with Going Pro's prospective economic advantage and existing business relationships by wrongfully using Going Pro's trade secrets and proprietary business information for the purpose of benefitting JWP, a competitor of Going Pro.

100.   In spite of this knowledge, Defendants wrongfully interfered with Going Pro's prospective economic advantage and existing business relationships by soliciting Going Pro's customers and business contacts.

101.   Defendants engaged in these acts with full knowledge and intention to interfere with or disrupt the economic relationships that Going Pro enjoyed with its customers, and the wrongful acts described herein demonstrate Defendants' intentional conduct.

102.   Defendants' conduct was intentional and willful in that Defendants intended to harm Going Pro's economic and financial interests.

103.   Defendants' conduct was wrongful and not justified, privileged, or excusable.

104.   As a direct and proximate result of Defendants' wrongful conduct, Going Pro has suffered economic losses, including but not limited to, lost customers, business, revenues, and profits, as well as irreparable harm and loss of goodwill, and Going Pro is entitled to compensatory damages in an amount to

be proven at trial and punitive damages as a result of Defendants' intentional, willful, and malicious conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

1.     Ordering Defendants to provide a full accounting of all the ways in which they have used Plaintiff's customer lists and trade secrets;

2.     Awarding Plaintiff monetary damages, including compensatory damages, actual losses, disgorgement of Defendants' ill-gotten profits, and exemplary/punitive damages as authorized by applicable statutes;

3.     Entering a preliminary injunction precluding Defendants from continuing to use Plaintiff's trade secrets and confidential customer information;

4.     Permanently enjoining Defendants from using, possessing, or maintaining any of Plaintiff's trade secrets and confidential customer lists, and any derivatives, copies, or compilations Defendants created using Plaintiff's customer lists and data;

5.     Ordering Defendants to immediately turn over and deliver to Plaintiff all copies of Plaintiff's trade secrets and customer data, derivative works, and compilations;

6.     Awarding Plaintiff incidental, consequential and other damages, remedies, and relief as deemed proper and lawful by the Court, and in such amount as may be proven at trial;

4872-8338-1840, v. 1

7.     Awarding Plaintiff its reasonable attorneys' fees and costs as authorized by applicable statutes.

Plaintiff demands a trial by jury on all triable issues.

**STARK & STARK**
A Professional Corporation
*Attorneys for Plaintiff Going Pro: The*
*Business of Wildlife Photography LLC*


By: _/s/ Gene Markin_____
        GENE MARKIN, ESQ.

Dated:  February 10, 2023


## <u>CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, it is hereby stated that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**STARK & STARK**
A Professional Corporation
*Attorneys for Plaintiff EP Henry Corporation*


By: _/s/ Gene Markin_____
        GENE MARKIN, ESQ.

Dated:  February 10, 2023